**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**BETH ANN KREBS, Next Friend of**
**COURTNEY KREBS, a minor,**

                **Plaintiff,**

**v.**                                **CASE NO.**    **05-70152**
                                            **HONORABLE DENISE PAGE HOOD**

**SHARON KAY WYATT,**

                **Defendant.**
_____/


**<u>ORDER</u>**


**I.**       **INTRODUCTION**

      This matter is before the Court on Defendant Wyatt's Motion for Summary Judgment filed

on October 19, 2005 and Plaintiff Krebs' Cross Motion for Summary Judgment filed on November

23, 2005.  Plaintiff filed a Response to Defendant's Motion for Summary Judgment on November

23, 2005 and Defendant filed a Response to Plaintiff's Cross Motion for Summary Judgment on

December 06, 2005.

**II.**      **STATEMENT OF FACTS**

      This action arose from an automobile accident that occurred on June 26, 2004.  Courtney

Krebs was a passenger in a motor vehicle operated by Lisa Ann Chandler.  Ms. Krebs, a thirteen

year old female at the time, was a seat belt-restrained passenger in a car that was rear-ended by

Defendant's vehicle.  (Def.'s Mot. For Summ. J. at 4).  Ms. Chandler's vehicle was traveling in front

of Defendant's car in the same lane.  When Ms. Chandler stopped for a traffic light, Defendant failed

to stop. *Id.* at 3. Defendant struck Ms. Chandler's vehicle in the rear, pushing Ms. Chandler's vehicle into the car in front of her. Upon impact, Ms. Krebs' seat broke and she fell backwards. Ms. Krebs was transported by ambulance from the scene of the accident to a hospital. *Id.*

On July 6, 2004, Ms. Krebs was evaluated by Dr. Guillermo Suarez. Dr. Suarez's initial diagnostic "impression" indicated that Ms. Krebs had "(1) whiplash of the cervical spine; (2) thoracic spine strain/sprain with myofasciitis; and lumbosacral spine sprain/strain with myofasciitis superimposed on a pre-existing injury with aggravation of symptoms."[1] *Id.* at 4, Ex. C. Dr. Suarez proscribed a plan of action, which included a MRI, various x-rays, prescriptions, functional testing, physical therapy, and daily activity restrictions. *Id.* Dr. Suarez concluded that the accident was the cause of the conditions diagnosed. However, in response to questions of whether the patient is able to return to normal activities without restrictions and whether the patient has a permanent injury, Dr. Suarez concluded unknown and undetermined, respectively. *Id.*

On July 7, 2004, Dr. Robert P. Ruvolo conduct a MRI scan of the cervical spine, which revealed a central disk protrusion at L5-S1. (Pl.'s Cross Mot. at 4, Ex. 4). On the same day, after an x-ray of the cervical spine, Dr. Jayson A. Lord made the "impression" that there was "no acute osseous abnormality. Loss of cervical lordosis identified." (Pl.'s Cross Mot. at 4, Ex. 5). Dr. Ruvolo conducted another MRI on July 21, 2004 and found: "Cervical spine straightening, which is consistent with soft tissue injury" and "left eccentric disk protrusion, which is causing a significant moderate proximal left neuroforaminal stenosis with impress upon the left existing nerve

---

[1] The doctor also noted that Plaintiff injured her back prior to the automobile accident while she was playing softball. The softball injury occurred on July 12, 2003 and Plaintiff suffered a mild central disc bulge at L5-S1 and subsequently received physical therapy for approximately one year as a result of that injury. (Def.'s Mot. For Summ. J. at 4, Ex. C).

root."  (Pl.'s Cross Mot. at 4, Ex. 6).

On August 5, 2004, Ms. Krebs began treatment with Dr. Albert T. Gilpin at Midlands Orthopaedics, PA.  Dr. Gilpin noted that Ms. Krebs' injury was from "a motor vehicle accident on 06/26/04 in which she sustained a questionable injury to her neck and back."  Dr. Gilpin also noted that Ms. Krebs described "a lot of pain in her neck and lower back. Symptomatology is made worse with bending and improves with lying down. The patient describes definite limitations when she wakes up."  (Pl.'s Cross Mot. at 4, Ex. 7).  Dr. Gilpin's diagnoses were, "muscular ligamentous strain cervical as well as lumbosacral spine without evidence of nerve root irritation."  *Id.*

Plaintiff has seen a variety of other doctors to whom she has reported pain, which worsens with bending, lifting, and climbing.[2]  (Pl.'s Cross Mot. at 4, Ex.'s 8, 9).  On October 14, 2004, Ms. Krebs began receiving treatment at the Center for Pain Management with Dr. Timothy M. Zgleszewski.  Among other treatment therapies, Ms. Krebs began a treatment program of steroid injections to relieve her pain.  (Pl.'s Cross Mot. at 4, Ex. 10).

Notably, on June 21, 2005, Ms. Krebs returned to Dr. Zgleszewski's office and Dr. Zgleszewski noted, "[a]t this point in time, her function is really being effected. She is not able to play softball or do a lot of activities she wants to do, and therefore if continued conservative

---

[2] On July 6-22, 2004, Dr. Suarez evaluated Ms. Krebs and ordered various devices, physical therapy and prescribed Naproxen, Percocet, and Flexerel.  Dr. Suarez restricted Ms. Krebs' activities. Dr. Ruvolo noted central disk protrusion at L5-S1. An MRI on July 21, 2004 showed a significant moderate proximal left neuroforaminal stenosis with impress upon the left existing nerve root.  On August 5, 2004, Ms. Krebs reported to Dr. Lillie E. Bates that she was experiencing  "a lot of pain in her neck and lower back".  On August 10, 2004, reporting significant pain and dizziness, Ms. Krebs was taken off of Vioxx and instructed to take Motrin and Flexerel.  A duplicate set of textbooks was also proscribed to avoid aggravation of her back injury.  Ms. Krebs' pain was not improving through the physical therapy proscribed by Dr. Bates.  Ms. Krebs also was seen by Dr. P. Douglas deHoll who recommended that she contact Evan Cohen, a chiropractor and that she be evaluated by the Baptist Pain Center.  (Pl.'s Cross Mot. at 4, Ex. 3-6).

treatment does not help, then I think her going ahead with radiofrequency neurolysis would be appropriate."[3] *Id.*

The Complaint asserts that the Defendant was: (1) negligently and recklessly operating her motor vehicle at a speed greater than would permit her to stop it within the assured clear distance ahead; (2) negligently and recklessly failing to operate her motor vehicle in a careful, safe and reasonable manner; and (3) negligently and recklessly failing to take due regard for traffic and surface conditions then and there existing.

## III.  STANDARD OR REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

[T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

---

[3] Defendant points out that at a January 27, 2005 appointment with Dr. Zgleszewski he noted, "[a]s far as softball is concerned for Ms. Krebs, she is doing no prolonged running.  At this point in time, she should have no problems participating in softball, even at the high school varsity level. She has been participating in practice."  (Def.'s Mot. For Summ. J. at 6, Ex. G).

4

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV. APPLICABLE LAW & ANALYSIS

Defendant argues that Plaintiff's Complaint is governed by Michigan's No-Fault Act, MICH. COMP. LAWS § 500.3101 *et seq*., since this action arises out of a motor vehicle accident allegedly caused by Defendant Double's negligent driving. An individual is only liable in tort under Michigan's No-Fault Act if the injured party "has suffered death, serious impairment of body function, or permanent serious disfigurement." MICH. COMP. LAWS § 500.3135 (1). Defendant argues that Plaintiff has failed to establish she suffered a serious impairment of body function within the meaning of the Act, consequently summary judgment in their favor is appropriate.

This Court must determine as a matter of law whether Plaintiff's injuries meet the "serious impairment of body function" threshold set out in Michigan's No-Fault Act so that Plaintiff may maintain her action for noneconomic tort damages. A serious impairment of body function is defined in the statute as an "objectively manifested impairment of an important body function that

affects the person's general ability to lead his or her normal life. MICH. COMP. LAWS § 500.3135(7). The *Kreiner* Court outlined the necessary inquiry trial courts must make when determining whether a plaintiff has suffered a serious impairment of body function. *See Kreiner* v. *Fischer*, 471 Mich. 109, 131-35, 683 N.W. 2d 611 (Mich. 2004). First, the Court must determine whether:

> (*I*) There is no factual dispute concerning the nature and extent of the person's injuries.
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement . . . .

MICH. COMP. LAWS. § 500.3135(1), (2)(a)(*I*)-(*ii*); *Kreiner*, 471 Mich. at 132. If the Court determines there is a material, factual dispute as to "the nature and extent of a plaintiff's injuries" that is necessary to the Court's determination of "whether the plaintiff has suffered a serious impairment of body function the court may not decide the issue as a matter of law." *Id.*

Next, if the Court determines as a matter of law that either there is no factual dispute, or there is a factual dispute but it is immaterial to the determination of whether the plaintiff has suffered a serious impairment of body function, the Court must determine whether an important body function is impaired. *Kreiner*, 471 Mich. at 132. If the Court finds impairment of an important body function, then it must determine whether this "impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient." *Id.*

The last step in the inquiry is for the Court to determine whether the impairment of the important body function affects the plaintiff's general ability to lead her normal life. This requires consideration of whether the plaintiff is "generally able" to lead her normal life. *Kreiner*, 471 Mich. at 131. If she is generally able to do so, then her general ability to lead her normal life has not been

affected by the impairment.  *Id.* The *Kreiner* Court further stated that the impairment "must affect the course of a person's life," but noted that if interruptions result from the impairment which do not affect "the course or trajectory of a plaintiff's normal life" this is insufficient to the meet the threshold standard under the statute. *Id.* Trial courts must evaluate a plaintiff's life activities before and after the motor vehicle accident, while keeping in mind that all activities will not carry the same significance in a plaintiff's life, and minor changes in the performance of specific activities do not prevent a plaintiff's general ability to lead his or her normal life.  *Id.* at 132.  The Court also provided a list of nonexhaustive factors that should be considered when making the determination of whether the course of a plaintiff's normal life has been affected by the impairment.[4] *Id.* at 133-34.

In Defendant's Motion for Summary Judgment, Defendant asserts that Ms. Krebs cannot establish that, as a result of the accident, she suffered a serious impairment of an important body function because there is no objective evidence of injuries and her general ability to lead a normal life has not been altered.   Specifically, Defendant argues that Ms. Krebs sustained pre-accident injuries as a result of a basketball accident, she has continued to attend school and plays varsity softball.  In Plaintiff's Cross Motion for Summary Judgment, Plaintiff requests that this Court find, as a matter of law, that Ms. Krebs has sustained a serious impairment of an important body function. Plaintiff argues that Ms. Krebs continues to suffer pain from injuries caused by the accident and, as a result, has had to give up many activities.

The Court recognizes that Ms. Krebs suffered pre-accident injuries to the same bodily region

---

[4]  The factors include:
> (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery. (Footnotes omitted).

7

as that impacted by the accident in question.  However, the Court finds that there is a material issue of fact as to the relationship between the past injuries and the injuries in question.  The Court also finds that, although Plaintiff has presented evidence of her injuries and post-accident therapies, there is a factual dispute regarding the nature and extent of these injuries.

For the above reasons, the Court finds that there is a genuine issue of material fact as to whether Plaintiff has a serious impairment of body function, that is, whether she has suffered an objectively manifested injury that affects her ability to lead a normal life.

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [**Docket No. 16, filed October 19, 2005**] is DENIED and Plaintiff's Cross Motion for Summary Judgment [**Docket No. 18, filed November 23, 2005**] is DENIED.

                                                    /s/ Denise Page Hood
Dated: October 11, 2006                             United States District Judge

**Proof of Service**

The undersigned certifies that a copy of the foregoing Order was served on the attorneys of record herein by electronic means or U.S. Mail on **October 11, 2006**.

                    s/Kim Grimes
                    Acting in the absence of
                    William Lewis, Case Manager